ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2007 OCT -2 P 2:32
CLERK

LAWRENCE RUPERT SMITH, )
)
Petitioner, )
)
v. ) CV 106-059
)
THOMAS AMMONS, Warden, )
)
Respondent. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Lawrence Rupert Smith commenced the above-captioned case pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

On April 25, 2003, Petitioner pled "guilty but mentally ill" in the Richmond County Superior Court to three (3) counts of child molestation and two (2) counts of aggravated child molestation. (Doc. no. 10, Ex. 4, pp. 171-72). Subsequently, Petitioner was sentenced to confinement for a period of 60 years.[1] (Id. at 157). Petitioner did not appeal. (Doc. no. 1, p. 2; doc. no. 9, p. 2).

---

[1] The Superior Court of Richmond County indicated that the Petitioner was to serve 40 years of incarceration and the remaining 20 years on probation. (Doc. no. 10, Ex. 4, Resp't Ex. 1).

On January 9, 2004, Petitioner filed a state petition for a writ of habeas corpus in the Superior Court of Chatham County. (Doc. no. 10, Ex. 1). In that petition, Petitioner argued that: (1) he was denied the right to a fair trial because his trial counsel failed to (a) confront the witnesses and victims, (b) explain anything to him, (c) give him sufficient time to decide whether to take the plea offer, (d) correctly inform him that some of the charges carried a thirty-year sentence, and (e) protect attorney-client privilege; (2) his trial counsel had a conflict of interest; (3) his trial counsel deprived him of his first amendment right to freedom of speech because she instructed him not to speak during the proceedings other than to answer the judge's questions; and (4) his plea was not knowingly, intelligently, or voluntarily entered. (Id., Ex. 2, pp. 2-10). After an evidentiary hearing, the state habeas court determined that Petitioner's claims were without merit and denied the petition. (Id. at 11). Thereafter, Petitioner filed an application for a certificate of probable cause to appeal ("CPC") with the Supreme Court of Georgia, which was dismissed as untimely filed on April 26, 2006. (Id., Ex. 3).

While Petitioner's CPC application was pending, Petitioner filed a second state habeas corpus petition in the Superior Court of Coffee County, challenging the same convictions. (Id., Ex. 5). On January 18, 2006, the second state habeas court held an evidentiary hearing, which resulted in the dismissal of the second state habeas petition "based upon the grounds that he [Petitioner] already has a prior petition that's not finally disposed of." (Doc. no. 18, Ex. 1, p. 9).

2

In the instant federal petition for a writ of habeas corpus, Petitioner asserts the following claims: (1) his counsel was ineffective for (a) forcing him to sign a blank change-of-plea form without giving him time to decide whether to plead guilty, (b) not explaining the plea form or that two of the charges against Petitioner carried thirty-year sentences and did not allow for parole, (c) not filing a sentencing recommendation or a motion to withdraw the plea despite Petitioner's asking counsel to do so, (d) not informing him of his post-conviction remedies or not filing any post-conviction motions, and (e) telling him that he could only answer the judge's questions at the sentencing hearing and not permitting him to otherwise speak with the court; (2) he did not knowingly, intelligently, and voluntarily plead guilty;[2] (3) his rights under the Vienna Convention were violated by the arresting officer; and (4) the state habeas court violated his First, Sixth, and Fourteenth Amendment rights by "intimidating the Petitioner by bringing up his past history of abuse and avoiding the unconstitutional issues of his conviction and sentence" and not allowing him to fully state his claims for relief. (Doc. no. 1, pp. 4-16; doc. no. 4, pp. 6-7, 9-11). Respondent answered, denying the allegations in the petition. (Doc. no. 7).

Along with the answer, Respondent filed a motion to dismiss, arguing that the Court should dismiss the instant petition for lack of exhaustion, or in the alternative, hold it in abeyance to allow Petitioner to exhaust his third claim. (Doc. nos. 8 & 9). Petitioner opposed the motion, claiming unreasonable and undue delay by the second state habeas court

---

[2]Petitioner raises this claim as two issues; however, Petitioner's actual claim is that he did not knowingly, intelligently, and voluntarily plead guilty, a claim for which he provides several supporting arguments.

3

in ruling on his third claim. (Doc. no. 17). Furthermore, Petitioner asserted that, if the Court determined claim three had not been exhausted, he wished to proceed with the exhausted claims. (Id. at 5).

On December 12, 2006, the Court recommended that claim three be dismissed without prejudice and that the remainder of the petition be allowed to proceed. (Doc. no. 19, p. 9). The Honorable Dudley H. Bowen, Jr., United State District Judge, adopted this Court's December 12th Report and Recommendation and gave Respondent twenty (20) days to brief his position regarding Petitioner's remaining claims. (Doc. no. 22). Respondent briefed the remaining claims, making the following arguments: (1) Petitioner's grounds are procedurally defaulted; (2) Petitioner received effective assistance of counsel; and (3) Petitioner knowingly and voluntarily entered his guilty plea. (Doc. no. 25). Petitioner responded in opposition to Respondent's arguments. (Doc. nos. 31 & 32). The Court resolves the matter as follows.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court addressed Section 2254(d) in Brown v. Payton, 544 U.S. 133 (2005). The Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. at 141 (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA sets a highly deferential standard of review for state court factual determinations. The AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with

"clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. ___, 127 S. Ct. 1933, 1939-40 (2007) (quoting 28 U.S.C. § 2254(e)(1)); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000). If the record provides any support for a state court's factual findings, this Court may not set aside those findings unless and until they are rebutted by clear and convincing evidence. Crawford, 311 F.3d at 1317.

### III. DISCUSSION

A.  **Exhaustion and Procedural Default Rules Explained**

Respondent argues that Petitioner has procedurally defaulted his claims because he failed to properly exhaust his state remedies. (Doc. no. 25, p. 5). The AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. § 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). In reference to this requirement, the Supreme Court has held that a state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v.

Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

Moreover, giving the state courts an opportunity to act on a petitioner's claims includes allowing the state courts to complete the appellate review process. As the Supreme Court explained:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

Id. at 845. This "one full opportunity" includes pursuing discretionary review with the highest available appellate court where the highest court of the state has not opted out of this requirement.[3] Id. The Eleventh Circuit has ruled that Boerckel "applies to the state collateral review process as well as the direct appeal process." Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (citing Pruitt v. Jones, 348 F.3d 1355, 1359 (11th Cir. 2003)).

As the Eleventh Circuit has explained, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir.

---

[3] In Georgia, on direct appellate review, "'a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies' . . . ." Hills v. Washington, 441 F.3d 1374, 1375 (11th Cir. 2006) (per curiam) (quoting Ga. Sup. Ct. R. 40).

7

1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously."). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of procedural default rules in one of two ways. First, a federal habeas petitioner can improperly attempt to revive an old claim that a state court has previously denied on procedural grounds. When a state court denies a constitutional claim on "adequate and independent"[4] state procedural grounds, the district court is precluded from later reviewing the merits of the claim on collateral attack. Judd, 250 F.3d at 1313.

---

[4]A state court decision rests upon "adequate and independent" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state rule must be adequate, i.e., it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.

Judd, 250 F.3d at 1313 (internal quotes and citations omitted).

Likewise, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see also Harris v. Reed, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006), cert. denied, 127 S. Ct. 619 (U.S. Nov. 13, 2006).

Of course, the Eleventh Circuit has explained that a procedural default may be excused if certain conditions are met:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice.

Id. (internal citations omitted). Cause entails a showing "that some objective factor external to the defense impeded" efforts to comply with the state procedural rule. Coleman v. Thompson, 501 U.S. 722, 753 (1991). A state petitioner may also demonstrate cause to overcome a procedural default by demonstrating that he received constitutionally ineffective assistance of counsel. Turpin v. Todd, 268 Ga. 820, 826 (1997). The narrow fundamental

9

miscarriage of justice exception, on the other hand, encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray v. Carrier, 477 U.S. 478, 496 (1986).

Having summarized the applicable procedural default rules, the Court now turns to the threshold issues: (1) whether Petitioner's claims have been procedurally defaulted, and (2) if so, whether the default may be excused.

### B. Application to the Instant Case

#### 1. Petitioner's Claims Have Been Procedurally Defaulted

Respondent argues that Petitioner's claims are procedurally defaulted because Petitioner failed to timely pursue an application for a CPC to appeal the state habeas court's denial of relief. (Doc. no. 25, p. 5). In denying Petitioner's application for a CPC, the Supreme Court of Georgia concluded that "[Petitioner's] notice of appeal was timely filed, but his application for a CPC was not filed in this [c]ourt until June 15, 2005, making it untimely." (Doc. no. 10, Ex. 3). Furthermore, the Supreme Court of Georgia determined that "[Petitioner] did not file a request for extension of time *in this Court* . . . ." (Id. (emphasis added)). The Court must presume and accept the correctness of the Supreme Court of Georgia's factual findings because Petitioner has failed to submit clear and convincing evidence to rebut these factual findings. As Petitioner's application for a CPC was untimely, Petitioner has procedurally defaulted his claims. Cf. Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (*per curiam*) (holding that in order to properly exhaust state court remedies, a Georgia inmate must file an application for a CPC to appeal the denial of his

10

state habeas petition). Therefore, Petitioner's procedurally defaulted claims constitute no basis for federal habeas corpus relief, absent a showing of cause to excuse the default.

### 2. Petitioner's Procedural Default May Not Be Excused

Petitioner argues that his procedural default should be excused because he was not given a fair opportunity to timely file an application for a CPC with the Supreme Court of Georgia. (Doc. no. 31, p. 3). According to Petitioner, on May 19, 2005, he received the final order denying his state habeas petition, leaving him only six (6) days to prepare and file his notice of appeal and CPC application. (Id. at 4-5). Petitioner contends that he was unable to prepare his notice of appeal and request for extension of time until May 24, 2005 because "the weekend was at hand [and] the Coffee [Correctional Facility's] Law Library was closed and Petitioner could only attend once a week[,] which was on Fridays." (Id. at 5). After mailing his notice of appeal and request for an extension of time to the Clerk of the Georgia Supreme Court, Petitioner avers that, approximately two weeks after the mailing, the Georgia Supreme Court sent a notice stating that extensions must be filed before the time for filing pleadings has expired. (Id.). Petitioner concludes that his procedural default should be excused because the Clerk of the Supreme Court of Georgia failed to file his request for an extension of time, and thus, this constitutes an objective, external factor that impeded his efforts to comply with Georgia's procedural rule. (Id. at 6).

Despite Petitioner's contentions, the Court is not persuaded that his procedural default should be excused. Assuming Petitioner received the state habeas court's final order on *Thursday*, May 19, 2005, he had access to the Coffee Correctional Facility's law library on *Friday*, May 20, 2005, leaving several days to file the necessary documents in compliance

11

with Georgia's procedural rule. Clearly, receiving the state habeas court's final order six (6) days prior to the deadline for filing his request for an extension with the Supreme Court of Georgia did not impede Petitioner's ability to timely file his notice of appeal with the Superior Court of Coffee County. Petitioner offers no explanation for why the alleged time constraint affected his ability to timely file a request for an extension, but had no apparent effect on his ability to timely file his notice of appeal. Thus, the Court is not persuaded that receiving the state habeas court's final order six (6) days prior to the deadline for filing the necessary documents impeded Petitioner's ability to fully comply with Georgia's procedural rule by timely filing his application for a CPC or request for an extension.

Petitioner also argues that his procedural default should be excused because the Clerk of the Supreme Court of Georgia refused to file his request for an extension. According to Petitioner, on May 24, 2005, he mailed his notice of appeal and request for extension of time to the Georgia Supreme Court, Coffee County Superior Court, and the Attorney General's Office.[5] (Doc. no. 1, p. 13; doc. no. 31, p. 5). Plaintiff maintains that, on June 6, 2005,[6] he

---

[5]"If an unsuccessful [habeas] petitioner desires to appeal, he must file a written application for a certificate of probable cause to appeal with the clerk of the Supreme Court within 30 days from the entry of the order denying him relief. The petitioner shall also file within the same period a notice of appeal with the clerk of the concerned superior court." O.C.G.A. § 9-14-52. Furthermore, "appeals in habeas corpus cases are governed by the Appellate Practice Act, O.C.G.A. § 5-6-30 et seq." Head, 276 Ga. at 438 (citing O.C.G.A. § 9-14-52(a)). Accordingly, requests for extensions of time for filing CPC applications must be filed with the Supreme Court of Georgia before the expiration of the period for filing as originally prescribed or previously extended. See O.C.G.A. §§ 5-6-39(a) & (d). Thus, Petitioner should have filed his notice of appeal with the Clerk of Coffee County Superior Court and his request for extension with the Clerk of the Supreme Court of Georgia, both within thirty (30) days from the date that the state habeas court denied relief.

[6]The state habeas court denied relief on April 25, 2005, and thus, Petitioner should have filed his application for a CPC or request for an extension in May of 2005. See

12

mailed his application for a CPC to the Supreme Court of Georgia, but the Clerk sent him a notice on June 22, 2005 stating requests for extensions of time must be filed before the time for filing pleadings has expired. (Id.).

Despite Petitioner's contention that the Clerk of the Supreme Court of Georgia failed to file his request for extension, it appears that Petitioner improperly filed his request for extension with the Clerk of Coffee County Superior Court. On May 24, 2005, Petitioner sent a letter to the Clerk of Coffee County Superior Court containing his notice of appeal and request for extension, wherein he asks the Clerk of Coffee County Superior Court to file the enclosed documents and send him a copy. (Doc. no. 4, p. 14). The Clerk of Coffee County Superior Court complied, filing Petitioner's notice of appeal and request for extension on June 3, 2005.[7] (Doc. no. 1, pp. 28-32). Notably, the Certificate of Service attached to the request for an extension certified that Petitioner served the Clerk of Coffee County Superior Court and the Attorney General, but not the Clerk of the Supreme Court of Georgia.[8] (Id. at 32). As such, it appears that the Supreme Court of Georgia correctly determined that "[Petitioner] did not file a request for extension of time *in this Court* . . ." within 30 days from the entry of the state habeas court order denying him relief. (Doc. no. 10, Ex. 3 (emphasis added)). Therefore, Petitioner has failed to demonstrate that some objective,

---

O.C.G.A. § 9-14-52.

[7]As previously discussed, Petitioner should have filed his request for an extension with the Supreme Court of Georgia.

[8]The Court notes, however, that Certificate of Service attached to the untimely application for a CPC certified that Petitioner served the Clerk of Coffee County Superior Court, the Attorney General, and the Supreme Court of Georgia. (Doc. no. 4, p. 44).

13

external factor impeded his efforts to comply with Georgia's procedural rule such that his procedural default should be excused. See Coleman, 501 U.S. at 753 (explaining requirements for establishing cause to excuse a procedural default based on failure to comply with the state procedural rule).

Furthermore, Petitioner does not allege that his failure to timely file his application for a CPC was the result of ineffective assistance of counsel.[9] Likewise, Petitioner did not file his state habeas corpus petition because he believed that he was erroneously convicted of child molestation. In fact, during the state habeas corpus evidentiary hearing, Petitioner admitted that he molested his daughter. (Doc. no. 10, Ex. 4, p. 53). As such, the narrow fundamental miscarriage of justice exception does not apply in this case. Murray, 477 U.S. at 496 (explaining that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ . . . ."). Therefore, the Court is not persuaded that Petitioner's procedural default should be excused.

In sum, Petitioner has procedurally defaulted the claims raised in the above-captioned petition by failing to timely file an application for a CPC with the Supreme Court of Georgia. Furthermore, Petitioner has failed to show cause excusing his procedural default. As such, Petitioner's claims constitute no basis for federal habeas relief.

---

[9]The ineffective assistance of counsel claim raised in the above-captioned petition is unrelated to Petitioner's failure to timely file his CPC application or request for extension with the Supreme Court of Georgia.

14

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this ___ day of October, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE